UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TRAVERSE BAY AREA INTERMEDIATE
SCHOOL DISTRICT, TRAVERSE CITY
AREA PUBLIC SCHOOLS,

        Plaintiffs,

v.                                                            Case No. 5:06-CV-139

MICHIGAN DEPARTMENT OF EDUCATION,        HON. GORDON J. QUIST
DEPARTMENT OF LABOR AND ECONOMIC
GROWTH, STATE OFFICE OF
ADMINISTRATIVE HEARINGS AND
RULES, and S.G., on behalf of her minor
 child, S.G.,

        Defendants.
_____/

**OPINION**

## TABLE OF CONTENTS

I.     Background and Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
       A.    Michigan's Administrative Review Process. . . . . . . . . . . . . . . . . . . . . . . . . . . 3
       B.    The Underlying Dispute. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
III.   Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
       A.    The Districts' Motion to Amend. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
       B.    Motions to Dismiss. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
             1.    S.G.'s Motion to Dismiss. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
                   a.    The 2004 Amendments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
                   b.    Exhaustion of Administrative Procedures. . . . . . . . . . . . . . . . . 14
             2.    The State Defendants' Motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
                   a.    Count III. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
                   b.    Count IV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
                   c.    Count V. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
       C.    S.G.'s Motion for Attorney Fees and Costs. . . . . . . . . . . . . . . . . . . . . . . . . . . 31
       D.    The Districts' Motion to Compel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
IV.    Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

## GLOSSARY OF TERMS

| | |
|---|---|
| EHA | Education of the Handicapped Act |
| FAPE | free and appropriate public education |
| IDEA | Individuals with Disabilities Education Act |
| IEP | individualized education program |
| LEA | local educational agency |
| LHO | local hearing officer |
| MDE | Michigan Department of Education |
| SEA | state educational agency |
| SOAHR | State Office of Administrative Hearings & Rules |

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TRAVERSE BAY AREA INTERMEDIATE
SCHOOL DISTRICT, TRAVERSE CITY
AREA PUBLIC SCHOOLS,

        Plaintiffs,

v.                                   Case No. 5:06-CV-139

MICHIGAN DEPARTMENT OF EDUCATION,     HON. GORDON J. QUIST
DEPARTMENT OF LABOR AND ECONOMIC
GROWTH, STATE OFFICE OF
ADMINISTRATIVE HEARINGS AND
RULES, and S.G., on behalf of her minor
 child, S.G.,

        Defendants.
_____/

## OPINION

### I. Background and Procedural History

      Plaintiffs, Traverse City Area Public Schools and Traverse Bay Intermediate School District

(the "Districts"), filed this action against Defendants S.G. ("S.G."), on behalf of her minor child,

S.G., and the Michigan Department of Labor & Economic Growth ("DLEG"), the State Office of

Administrative Hearings & Rules ("SOAHR"), and the Michigan Department of Education ("MDE"

and together with DLEG and SOAHR, the "State Defendants") on September 29, 2006,  asserting

four counts in their verified complaint for declaratory, injunctive, monetary, and equitable relief.

The Districts alleged federal question jurisdiction as the basis for this Court's subject matter

jurisdiction, in particular, the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §

1400, *et seq.*  and the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA"

2004).  Counts 1 and 2 alleged claims for breach of settlement and breach of contract against S.G.,

Count 3 alleged violation of the settlement agreement and unlawful exercise of jurisdiction over S.G.'s state administrative appeal by the State Defendants in violation of the IDEA, IDEA 2004, the Michigan Mandatory Special Education Act, and the Emergency Rules governing special education due process hearings in Michigan, and Count 4 alleged violations of the IDEA and IDEA 2004 by the State Defendants by improperly accepting and exercising jurisdiction over S.G.'s appeal.

In addition to their verified complaint, the Districts filed a motion for a temporary restraining order, stay pending appeal, and waiver of *supersedeas* bond, in which they sought a stay of the then-pending appeal before a SOAHR administrative law judge.  The Court denied the motion in a Memorandum Order entered on October 6, 2006, citing its concerns regarding the existence of jurisdiction and the fact that the state administrative law judge would soon be deciding S.G.'s appeal as substantial bases for its denial, and set a preliminary injunction hearing for November 7, 2006. Subsequently, S.G. and the State Defendants filed motions to dismiss for lack of jurisdiction.  By Order dated November 6, 2006, the Court cancelled the November 7, 2006, hearing and rescheduled it for November 16, 2006, to address the pending motions to dismiss.  On November 8, 2006, the Districts filed a motion for leave to file a first amended verified complaint based upon subsequent developments in the underlying administrative process, which by that time had concluded.[1]

The Court heard oral argument on the motions to dismiss at a hearing held on November 16, 2006.  By the conclusion of the hearing, the Districts' counsel and S.G.'s counsel had indicated some interest in  exploring arrangements for a medical examination of the minor child, in accordance with the parties' settlement agreement.  On December 8, 2006, the Court granted the parties' stipulated

---

[1] The Districts stated in their motion for leave to file their amended verified complaint that they sought concurrence from counsel for the State Defendants and counsel for S.G. but had not received it as of the time the motion was filed.  Because neither the State Defendants nor S.G. has responded to the motion, the Court will grant the motion and consider the Districts' first amended verified complaint as the operative pleading.

order regarding the medical evaluation of the minor child.  On December 8, 2006, the Districts filed a motion for leave to file a supplemental brief regarding the Districts' claims against the State Defendants.  By Order dated December 21, 2006, the Court raised the issue of whether any claims remained for decision in light of the agreement for the medical evaluation of the minor child and directed the parties to advise the Court of resolved and remaining claims.  Thereafter, the parties filed reports setting forth the Districts' remaining claims against both S.G. and the State Defendants. On January 19, 2007, the Court entered a stipulated Order amending the December 8, 2006, Order regarding medical evaluations.

In addition to the motions to dismiss, also before the Court are the Districts' motion for leave to file a first amended verified complaint, S.G.'s motion for attorney fees and costs, and the Districts' motion to compel the State Defendants to file the administrative record, for a briefing schedule, and for discovery from the State Defendants.  For the reasons set forth below, the Court will: (1) grant the Districts' motion for leave to file their first amended verified complaint; (2) grant the Districts' motion for leave to file a supplemental brief regarding the State Defendants' violation of the interagency agreement; (3) grant the State Defendants' motion to dismiss (Counts III-V of the first amended verified complaint); (4) grant S.G.'s motion to dismiss with regard to Counts I and II; (5) deny S.G.'s motion for attorney fees and costs without prejudice; and (6) deny the Districts' motion to compel filing of the administrative record, for a briefing schedule, and for discovery from the State Defendants.

## II.  Facts

### A.    Michigan's Administrative Review Process

Pursuant to the IDEA, school districts receiving federal funding must provide a "free and appropriate public education" ("FAPE") to all special education students in the "least restrictive

3

environment" ("LRE").  *See* 20 U.S.C. § 1412(a)(1),(5); *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 179, 102 S. Ct. 3034, 3037 (1982).  The IDEA provides procedures by which school officials, parents, and the student work together to create an individualized education program ("IEP").  *See* 20 U.S.C. § 1414(d).  An IEP "sets out the child's present educational performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Honig v. Doe*, 484 U.S. 305, 311, 108 S. Ct. 592, 598 (1988).  An IEP for a disabled child must provide an education for the child in the "least restrictive environment," as follows:

> To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

20 U.S.C. § 1412(a)(5).

The IDEA also imposes various procedural requirements on states, such as permitting parents "to examine all records relating to [the] child and to participate in meetings with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education of such child, and to obtain an independent educational evaluation of the child."  20 U.S.C. § 1415(b)(1).  If a parent or guardian is dissatisfied with her child's IEP or the child's progress under the IEP, she can file a complaint and request an impartial due process hearing, during which an impartial hearing officer evaluates the parent's and the school's evidence and legal arguments.  *See* 20 U.S.C. §§ 1415(b)(6), 1415(f).

A state may either provide a one-tier or a two-tier due process hearing system.  In a one-tier system, the state educational agency ("SEA") conducts the hearing and renders a decision.  *See* 20

4

U.S.C. § 1415(f)(1)(A). In a two-tier system, the local school district, or local educational agency ("LEA"), conducts the hearing in the first instance, and the hearing is conducted by a local hearing officer. *See* 20 U.S.C. § 1415(g). If either party is "aggrieved by the findings and decision rendered in such a hearing [it] may appeal such findings and decision to the State educational agency." *See* 20 U.S.C. § 1415(g)(1). The IDEA provides, as a minimum standard of impartiality, that a hearing officer shall not be "an employee of the State educational agency or the local educational agency involved in the education or care of the child." 20 U.S.C. § 1415(f)(3)(A)(i)(I). Under both systems, either party may file an action in state or federal court for review of the state level hearing officer's decision. 20 U.S.C. § 1415(i)(2).

Prior to July 1, 2006, Michigan had a two-tier system, under which LEAs and the state contracted with hearing officers, many of whom served as hearing officers at both levels. *See McLaughlin v. Holt Pub. Schs. Bd. of Educ.*, 320 F.3d 663, 667 (6th Cir. 2003). In 2005, Michigan Governor Jennifer Granholm issued Executive Order 2005-01, which created SOAHR and transferred to it most of the State's administrative hearing functions and administrative rule-making authority. Pursuant to that order, special education due process hearings were transferred from MDE to SOAHR, with the individual hearing officers being under the control of SOAHR instead of MDE. Executive Order 2005-01 became effective on March 27, 2005. In 2004, the MDE issued proposed rules relating to special education due process hearings. Among other things, those proposed rules changed the State's due process hearing system from a two-tier to a one-tier system. On May 20, 2005, after the administrative hearing and rule-making functions were transferred to SOAHR, SOAHR issued final regulations that were to become effective on July 1, 2006.

In early 2006, the Michigan Protection & Advocacy Service, Inc. ("MPAS") filed two lawsuits in the Ingham County Circuit Court seeking to enjoin the State from implementing the new

5

process.  The lawsuits alleged that:  (1) MDE and SOAHR violated the Administrative Procedures Act because MDE never lawfully adopted the special education due process rules and SOAHR did not have authority to promulgate regulations regarding due process hearings; (2) MDE and SOAHR violated Executive Order 2005-1 by failing to enter into an interagency agreement as required by Executive Order 2005-1; and (3) MDE violated the IDEA by delegating its supervision responsibility to SOAHR, by failing to enter into an interagency agreement ensuring SOAHR's compliance with the IDEA, and by failing to require SOAHR to reissue the due process hearing rules for public comment with adequate notice of hearing prior to adopting them.  After these lawsuits were filed, the MDE and SOAHR entered into an interagency agreement ("Interagency Agreement").  In addition, the MDE promulgated the due process hearing rules as emergency rules ("Emergency Rules") in response to MPAS' allegation that SOAHR had not properly adopted the rules.  Both the Interagency Agreement and the Emergency Rules were adopted on June 30, 2006, and became effective the following day.  The adoption of the Interagency Agreement rendered two of MPAS' claims moot and the parties thereafter settled the lawsuits.  Pursuant to the Emergency Rules, the two-tier system continued to apply to due process hearings requested before July 1, 2006.

**B.    The Underlying Dispute**

S.G. is the parent of her minor daughter, S.G.  The minor is enrolled in Plaintiff Traverse Bay Area Intermediate School District and has a primary disability of autism, which qualifies her for an IEP.  The minor also has certain other medical conditions which may impact her ability to attend school in a classroom setting.  On June 24, 2005, S.G., who was unrepresented by counsel, requested a due process hearing regarding the minor's existing IEP dated February 4, 2005.  In her request, S.G. represented that her daughter was unable to attend one of the Districts' public school programs due to certain medical conditions.  In support of this assertion, S.G. provided the Districts a letter

6

from Dr. Nancy Reye, stating that the minor should continue to receive services at home and that she could not receive services in the school setting due to increased risk of infection.  S.G. also asserted that her daughter was not receiving some of the services identified in the IEP.  The Districts requested that S.G. provide access to the minor's medical records or medical providers in order to assess the basis for the need for home-based services, but S.G. refused to provide access.  The parties agreed that Davida Pappas would serve as the local hearing officer ("LHO Pappas") regarding S.G.'s hearing request.  Over the following months, LHO Pappas conducted several pre-hearing conference calls in which she encouraged S.G. to provide the minor's medical records to The Districts, but S.G. refused to do so.

In January of 2006, counsel filed an appearance on behalf of S.G. in the due process proceeding.  After this time, S.G. provided medical records to the Districts via an *in camera* inspection by LHO Pappas.  Thereafter, the parties agreed to return to the IEP process and also agreed that if a dispute arose out of the IEP team meeting, it would be subject to the upcoming due process hearing.  The parties held the first of two IEP meetings on April 7, 2006.  At that meeting, Plaintiff's independent medical professional expressed her opinion that, based upon her review of the medical records, S.G. could attend school safely and that her medical condition could be accommodated in the school setting.  S.G. objected to this opinion and terminated the meeting.  A second IEP team meeting was held on May 4, 2006, with counsel present.  As a result of that meeting, the Districts proposed an IEP providing for comprehensive reevaluations of the minor by a team of educational and medical professionals, including an examination by a qualified medical professional.

The due process hearing regarding the February 2005 and May 2006 IEPs was set for May 16, 2006.  On May 5, 2006, the Districts made a written ten-day settlement offer to S.G. pursuant

to 20 U.S.C. § 1415(i)(3)(D)(i)(I) and (II). The offer provided, among other things, that the May 2006 IEP would be implemented as written, except as amended by the settlement offer; that S.G. would send the minor to a summer enrichment program, where the Districts' staff would observe her and collect data regarding her attendance; that the minor would begin her first day of the 2006-07 school year in the Districts' Mild Cognitively Impaired program at a public elementary school; that the due process hearing would be dismissed with prejudice; and that an order would be entered fully and finally terminating the proceedings. S.G.'s counsel made a counteroffer to the Districts' counsel, which included a request for attorney fees and a delay of the evaluation review plan until the end of the first semester of the 2006-07 school year. After relaying the counteroffer to his client, the Districts' counsel informed S.G.'s counsel that the Districts had rejected the counteroffer. S.G.'s counsel informed the Districts' counsel that he intended to request an order from LHO Pappas incorporating the settlement into her order of dismissal in order to support a claim for prevailing party status for an award of attorney fees. S.G., through her counsel, accepted the Districts' offer.

S.G. filed a motion for entry of an order, requesting that LHO Pappas incorporate the terms of the settlement agreement into her order of dismissal. The Districts opposed the motion, arguing that LHO Pappas did not have jurisdiction to enter the settlement on the record. On June 30, 2006, LHO Pappas issued a decision denying S.G.'s motion and dismissing the matter with prejudice. In reaching her decision, LHO Pappas relied upon a decision by an LHO in another Michigan case refusing to enter a settlement reached under similar circumstances as part of her order of dismissal.

On or about July 25, 2006, S.G. filed for state level review of LHO Pappas' decision with the MDE. Pursuant to the Emergency Rules, the MDE referred the matter to SOAHR for a hearing.

8

SOAHR assigned the appeal to Administrative Law Judge Lauren Harkness ("ALJ Harkness").[2]  In addition, on August 22, 2006, S.G. filed an administrative complaint pursuant to Rule 340.1852(6) of the Michigan Administrative Code.  The Districts filed a motion requesting dismissal of the appeal on the ground that SOAHR lacked jurisdiction over the appeal, and ALJ Harkness issued a decision on August 26, 2006, concluding that she had jurisdiction to decide the matter.  The Districts then filed a motion for stay of the administrative proceeding pending their attempt to obtain interlocutory judicial review of the jurisdiction issue, which ALJ Harkness denied on September 19, 2006.  On November 1, 2006, ALJ Harkness issued her decision and order in which she determined that LHO Pappas erred in refusing to incorporate the settlement agreement into her order of dismissal.  ALJ Harkness therefore incorporated the settlement agreement into her order.  According to S.G., the MDE is holding S.G.'s administrative complaint in abeyance pending resolution of this matter.

## III.  Discussion

### A.      The Districts' Motion to Amend

As noted above, the Districts have moved for leave to file a first amended verified complaint to add a new claim challenging the November 1, 2006, decision of ALJ Harkness and to add additional allegations regarding the State Defendants' alleged violations of the IDEA, the Emergency Rules, and the Interagency Agreement.  Neither S.G. nor the State Defendants oppose the motion, although their motions to dismiss are also directed to any new allegations in the amended pleading that are related to them.  Accordingly, the Court will grant the Districts' motion to amend and

---

[2]ALJ Harkness is also the Supervisor of Special Education Hearings for SOAHR.

consider the first amended verified complaint as the operative pleading in ruling on the motions to dismiss.

**B.    Motions to Dismiss**

The legal and factual landscape of this case has changed significantly since the Districts filed their original complaint.  First, ALJ Harkness issued her decision in the underlying administrative appeal reversing LHO Pappas' decision not to incorporate the settlement agreement into the order dismissing the case.  As a result of this decision, it is undisputed that the Districts have a right to judicial review of ALJ Harkness' November 1, 2006, decision pursuant to § 1415(i)(2) of IDEA, as set forth in newly-added Count IV of the Districts' first amended verified complaint.  Second, pursuant to the stipulations between the Districts and S.G., which the Court has approved through its Orders, the medical and educational evaluations have apparently been completed.  Based upon the Districts' status report regarding their pending claims against S.G., it appears that, while some of the issues have been resolved, the Districts are still seeking relief for S.G.'s alleged breaches, including a declaration that S.G. was in breach of the settlement agreement and an award of costs and attorney fees.  Finally, the Districts have amended their claims against the State Defendants to allege that they violated: (1)  the IDEA, the Emergency Rules, and the Interagency Agreement by failing to provide an impartial State Level Review Officer to adjudicate S.G.'s appeal; (2) the Emergency Rules and the Interagency Agreement by failing to rotate due process hearing and state hearing officers; and (3) the IDEA, the Emergency Rules, and the Interagency Agreement by failing to appoint a state review officer who was not an employee of the MDE.

**1.    S.G.'s Motion to Dismiss**

S.G. contends that Counts I and II of the Districts' first amended verified complaint, which allege breach of the settlement agreement and breach of contract by S.G., must be dismissed because

10

the Court lacks jurisdiction.  In particular, S.G. contends that the Districts failed to exhaust administrative remedies and, alternatively, that the Court lacks jurisdiction to enforce the settlement agreement.  Apart from these arguments, S.G. contends that the Court should exercise its discretion and abstain from deciding Counts I and III.[3]  Because the Court concludes that the Districts failed to exhaust their claims regarding S.G.'s breach of the settlement agreement, it need not consider whether it should abstain from entertaining the Districts' breach of contract/settlement agreement claims against S.G.

In its October 6, 2006, Memorandum Order denying the Districts' *ex parte* motion for temporary restraining order, the Court noted its concerns regarding jurisdiction.  In particular, the Court cited  the IDEA provision entitling a party to bring a civil action for judicial review of an administrative determination, which provides:

> Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

20 U.S.C. § 1415(i)(2)(A).  The Court observed that because the administrative process had not been exhausted, the Districts' claims were likely premature.  The Court also concluded that the settlement agreement was neither a mediation agreement nor a resolution agreement pursuant to the 2004 amendments to the IDEA, codified as 20 U.S.C. § 1415(e)(2)(F) and § 1415(f)(1)(B)(iii).  The Districts concede this point, (Pls.' Resp. Def. S.G.'s Mot. at 4 (stating that "the settlement reached by the parties was, admittedly, not reached through a resolution meeting or mediation")), but they

---

[3]S.G. also argued that the Court lacks jurisdiction over The Districts' allegations that S.G. violated the Michigan Compulsory School Attendance Statute by failing to have the minor attend school as required by the settlement agreement.  The Districts have clarified, however, that they are not seeking to enforce that Act against S.G. and are not seeking any relief under that Act.  Thus, the Court need not address S.G.'s arguments regarding that issue.

argue that even so, the Congressional intent expressed in the 2004 amendments to IDEA is that settlement agreements entered into outside of mediation and resolution meetings are enforceable in federal court. The Districts further contend that, apart from the 2004 amendments, federal courts have jurisdiction to enforce private settlement agreements that implicate the fundamental purposes of the IDEA without requiring exhaustion.

### a.      The 2004 Amendments

Section 1415(e) of the IDEA requires any state or local educational agency receiving funding under the IDEA to make available to parties a process for resolving complaints through mediation. Similarly, § 1415(f) requires LEAs to conduct an early resolution session in which, among other things, the LEA is provided an opportunity to resolve the complaint. Both sections address the requirements for written agreements resolving the complaint reached through both mediation and a resolution section. Section 1415(e)(2)(F), which pertains to mediation, states:

> Written agreement. In the case that a resolution is reached to resolve the complaint through the mediation process, the parties shall execute a legally binding agreement that sets forth such resolution and that –
>> (i) states that all discussions that occurred during the mediation process shall be confidential and may not be used as evidence in any subsequent due process hearing or civil proceeding;
>> (ii) is signed by both the parent and a representative of the agency who has the authority to bind such agency; and
>> (iii) is enforceable in any State court of competent jurisdiction or in a district court of the United States.

20 U.S.C. § 1415(e)(2)(F). Section 1415(f) contains a similar provision:

> Written settlement agreement. In the case that a resolution is reached to resolve the complaint at a meeting described in clause (I), the parties shall execute a legally binding agreement that is –
>> (I) signed by both the parent and a representative of the agency who has the authority to bind such agency; and
>> (II) enforceable in any State court of competent jurisdiction or in a district court of the United States.

12

20 U.S.C. § 1415(f)(1)(B)(iii).   Prior to the 2004 amendments, subsection (e) did not contain a provision conferring jurisdiction upon federal courts to enforce settlement agreements reached through the mediation process, and subsection (f) did not include the "resolution session" provision. *See* Pub. L. No. 105-17, 111 Stat. 37 (1997).   Both were added pursuant to the 2004 amendments. *See* Pub. L. No. 108-446, 118 Stat. 2647 (2004).   Thus, written settlement agreements reached during the mediation process or in a resolution session which comply with the statutory requirements are now enforceable in state and federal courts.   *See* 34 C.F.R. §§ 300.506(b)(7), 300.519(d)(2).

Citing statements in the legislative history of the 2004 amendments, the Districts contend that Congress recognized that other settlement agreements reached outside of mediation or a resolution session are enforceable in federal court.   However, these statements merely confirm that written agreements reached pursuant to mediation or a resolution session are enforceable to the same extent as any other types of written settlement agreements or contracts.   Had Congress intended that *all* settlement agreements reached during the course of the administrative process be enforceable in federal court, it could have easily adopted a provision to that effect.   As the Court noted in its October 6, 2006, Memorandum Order, at least one court has rejected the argument that federal court jurisdiction extends to other types of settlement agreements under the 2004 amendments.   *See Bowman v. Dist. of Columbia*, No. 05-01933 (HHK), 2006 WL 2221703, at *2 (D.D.C. Aug. 2, 2006).   The *Bowman* court wrote that while the plaintiff might be correct that exercise of jurisdiction over other types of settlement agreements is a "logical extension" of the provisions of the 2004 amendments, it cautioned that "it is not the role of the courts to append new provisions to statutes whenever doing so might comport with some of Congress's goals."   *Id.*   It further observed that because the language of the statute is unambiguous, there was no reason to go beyond its plain meaning.   *See id.*   The Districts contend that *Bowman* is inapplicable because the settlement

13

agreement at issue in that case did not implicate the IDEA, but rather pertained to an agreement to reimburse the plaintiffs for reasonable attorney fees not to exceed four thousand dollars, thus rendering the plaintiff's claim one for mere breach of contract.  Even so, the *Bowman* court's reasoning is applicable regardless of whether or not the settlement agreement implicates the IDEA's core provisions.  Two other courts in more recent decisions have reached similar conclusions, even where the alleged breaches of the settlement agreements concerned the school districts' denial of a FAPE to the plaintiffs.  *See M.J. ex rel. G.J. v. Clovis Unified Sch. Dist.*, No. 1:05-CV-00927 OWW LJO, 2007 WL 1033444, at *5-6 (E.D. Cal. Apr. 3, 2007); *Pedraza v. Alameda Unified Sch. Dist.*, No. C 05-04977 VRW, 2007 WL 949603, at *4 (N.D. Cal. 2007).  Although those courts concluded that they lacked jurisdiction because the 2004 amendments were not retroactively applicable to settlement agreements reached prior to the effective date of the 2004 amendments, they acknowledged the limited basis of the grant of jurisdiction and did not conclude that the 2004 amendments render all settlement agreements judicially enforceable.  *See M.J.*, 2007 WL 1033444, at *7-8; *Pedraza*, 2007 WL 949603, at *4.

### b.    Exhaustion of Administrative Procedures

Apart from their reliance upon the 2004 amendments to the IDEA, the Districts contend that federal courts have jurisdiction to enforce settlement agreements implicating rights under the IDEA. As support, the Districts cite several cases, including *Wikol v. Birmingham Public Schools Board of Education*, 360 F.3d 604 (6th Cir. 2004), and *Amy S. v. Danbury Local School District*, 174 F. App'x 896 (6th Cir. 2006).[4]  Both cases provide some basis for the Districts' argument.  In *Wikol*,

---

[4]The Districts also cite *Re/Max International, Inc. v. Realty One, Inc.*, 271 F.3d 633 (6th Cir. 2001), and *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368 (6th Cir. 1976).  These cases are inapposite, however, because they address a district court's jurisdiction to enforce a settlement agreement reached during litigation before the court.  Neither of these cases involved the IDEA, and the settlement agreements were not reached during litigation.

the plaintiff parents and the school district entered into a settlement agreement pertaining to reimbursement for past and future educational services for the parents' autistic child.  The parties continued to dispute the reimbursement issues covered by the settlement agreement, and the parents initially requested a due process hearing.  After the parties stipulated to the dismissal of the request for a due process hearing, the plaintiff parents filed a complaint in federal district court seeking reimbursement pursuant to the agreement.  The district court granted the plaintiffs' motion for summary judgment in part but found that a genuine issue of material fact remained for the jury regarding the costs of the program.  A jury awarded the plaintiffs $5,000 for one school year but denied reimbursement for the other year.  On appeal, the issues presented were the timeliness of the plaintiffs' appeal and the district court's denial of the plaintiffs' request for attorney fees and costs. The Sixth Circuit concluded that the plaintiffs' appeal was timely only with regard to the issue of attorney fees and costs, as to which it vacated and remanded to the district court for further consideration.  *See* 360 F.3d at 610-12.  In *Amy S.*, the parents and the school district agreed to mediate a dispute regarding the parents' request for additional services.  The parties reached an agreement which provided that all issues regarding the child's education through the date of the agreement were resolved by the agreement.  When subsequent issues arose, the parties agreed to another mediation and signed a second agreement which stated that it resolved all of the prior educational issues.   The parents then filed a complaint in federal court alleging violations of the IDEA.  The Sixth Circuit affirmed the district court's conclusion that the plaintiffs' claims were barred by the mediation agreements.  *See* 174 F. App'x at 900.  It further held that the district court correctly rejected the plaintiffs' suggestion that the mediation agreements did not preclude their claims because the defendants breached both agreements.  *See id.* at 900-01.

15

Although *Wikol* and *Amy S.* both involved settlement agreements, neither case discussed or even considered the issue of exhaustion.  The Sixth Circuit has held that "§ 1415(i)(2) [of the IDEA] clearly contemplates that plaintiffs will exhaust their administrative remedies before bringing a civil action to enforce their rights under the IDEA."  *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000) (citing *Honig v. Doe*, 484 U.S. 305, 326-27, 108 S. Ct. 592, 606 (1988)).  As the Sixth Circuit has explained, exhaustion furthers important policies and objectives of the IDEA:

> States are given the power to place themselves in compliance with the law, and the incentive to develop a regular system for fairly resolving conflicts under the Act. Federal courts – generalists with no expertise in the educational needs of handicapped students – are given the benefit of expert factfinding by a state agency devoted to this very purpose.  Such a mechanism is necessary to give effect to a fundamental policy underlying the [IDEA]: "that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education." Were federal courts to set themselves up as the initial arbiters of the handicapped children's educational needs before the administrative process is used, they would endanger not only the procedural but also the substantive purposes of the Act.

*Crocker v. Tenn. Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir. 1989).  *See also Donoho v. Smith County Bd. of Educ.*, 21 F. App'x 293, 296-97 (6th Cir. 2001) ("Exhaustion 'enables the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy.'") (quoting *Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1094 (1st Cir. 1989)).[5]

---

[5]Many courts, including this one, have often referred to exhaustion of administrative remedies as a jurisdictional principle.  As the Tenth Circuit has observed, however, recent decisions from the Supreme Court regarding exhaustion in other contexts, including its decision in *Jones v. Bock*, __ U.S. __, 127 S. Ct. 910 (2007), regarding exhaustion under the Prison Litigation Reform Act, cast doubt on the characterization of exhaustion as an issue of jurisdiction.  *See McQueen v. Colorado Springs Sch. Dist. No. 11*, N. 06-1169, 2007 WL 1519872, at *4 (10th Cir. May 25, 2007).  The difference is that if it is jurisdictional, a court must always dismiss for a failure to exhaust, whereas dismissal may not be required upon grounds such as waiver, estoppel, or futility if exhaustion is not jurisdictional in nature.  *See id.* Because S.G. has asserted exhaustion in her motion to dismiss, the Court need not consider whether exhaustion is jurisdictional.

16

The Sixth Circuit has not addressed the issue of whether a party must exhaust a claim for breach of a settlement agreement reached during the course of a due process hearing.  However, several other courts have had occasion to consider the issue and have concluded that exhaustion is required, especially where the alleged breach relates to the child's receipt of a FAPE.  In a recent unreported decision, the Eleventh Circuit concluded that the plaintiff parents' claims that the defendants' actions violated the IDEA and constituted a breach of the parties' settlement agreement were subject to exhaustion.  *See J.P. v. Cherokee County Bd. of Educ.*, 218 F. App'x 911, 914 (11th Cir. 2007).  The court stated that "[c]onsistent with the unambiguous statutory language, which provides that '*any* matter *relating to* the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child,' we have interpreted the IDEA's exhaustion requirement as applying to a 'broad' spectrum of claims."  *Id.* at 913 (citations omitted).  It concluded that exhaustion was required because the plaintiff's alleged injuries were essentially concerned with the defendants' failure to provide him a FAPE and, therefore, were educational in nature.  *See id.* at 913-14.  In *R.P. ex rel. K.P. v. Springdale School District*, No. 06-5014, 2007 WL 552117 (W.D. Ark. Feb. 21, 2007), the court said:

> Plaintiffs initiated the administrative process by filing due process complaints on two occasions with the Department of Education – but they settled their claims prior to the scheduled hearings.  Invoking a due process hearing and then settling the claims prior to the hearing does not "'rise to the level of an exhaustion of administrative remedies.'" *S.A.S. v. Hibbing Pub. Sch.*, 2005 WL 1593011, *3 (D. Minn. 2005).  The *S.A.S.* Court reasoned:
>
>> Allowing the settlement . . . to constitute exhaustion would permit plaintiffs to proceed with their claims without developing a factual record, allowing the educational system to exercise its expertise in resolving this conflict, or providing the parties a full opportunity to avoid excessive litigation in direct contravention of Congress' intent behind the exhaustion requirement.

17

> *(Id.)*  Based on this reasoning, the Court concludes that plaintiffs' IDEA claims are
> subject to dismissal on the grounds that plaintiffs failed to exhaust their
> administrative remedies.

*Id.* at \*4.  *See also M.J.*, 2007 WL 1033444, at \*9 (concluding that the plaintiff's claim that the

defendant failed to provide a FAPE after entering into and breaching a settlement agreement were

subject to exhaustion and that such allegation could be redressed through the IDEA's administrative

procedures); *Pedraza*, 2007 WL 949603, at \*5 (concluding that the exhaustion requirement is not

satisfied by the parties' entry into a mediated settlement agreement); *Tyson v. Kanawha County Bd.

of Educ.*, 22 F. Supp. 2d 535, 537 (S.D.W.Va. 1997) ("Plaintiffs' allegations in their complaint recite

claims they believe were raised before the Board of Education, as well as additional claims which

occurred after the settlement agreement between the plaintiffs and Board of Education.  The issue

of whether a breach existed of any settlement between the parties is itself an entire new issue to be

complained of and put through the proper administrative process."); *Steward v. Hillsboro Sch. Dist.

No. 1J*, No. CV 00-835-AS, 2001 WL 34047100, at \*4 (D. Or. Mar. 1, 2001) ("This court cannot

consider claims of breach of the settlement agreement until they have been presented through a due

process hearing or the state complaint procedures, whichever is the proper administrative remedy.")

In the absence of Sixth Circuit authority on the issue to the contrary, the Court concludes that

the reasoning of the above cases requiring exhaustion of claims alleging breach of a settlement

agreement, especially where such claims relate to the provision of a FAPE, is sound.  Because the

Districts' breach of contract claims concern educational and medical evaluations of the minor as well

as her educational placement, these are issues that may be addressed through the administrative

process.  Moreover, because the Districts failed to exhaust these claims, the Court lacks a sufficient

basis to conduct its review.[6]  Accordingly, the Court will grant S.G.'s motion to dismiss Counts I and

II for breach of the settlement agreement based upon the Districts' failure to exhaust.[7]

     **2.**       **The State Defendants' Motion**

Initially, the State Defendants moved for dismissal of Counts III and IV of the verified

complaint on the basis that the lawsuit was premature because the administrative hearing had not yet

concluded.  In Count III of their verified complaint, the Districts alleged that the State Defendants

were violating the IDEA, the 2004 amendments, the Emergency Rules, and MDE's past practice and

procedure by exercising jurisdiction over a matter in which no hearing was held on the merits of a

complaint.  In other words, the Districts argued that S.G. was not an "aggrieved party" as set forth

in Section 1415(g)(1) of the IDEA.  In Count IV of their verified complaint, the Districts alleged that

pursuant to IDEA and the 2004 amendments, settlement agreements reached through private means

are to be enforced in a court of competent jurisdiction and not through the state administrative

process or complaint procedure.  The Districts further alleged that by exercising jurisdiction over the

appeal on a matter outside of their jurisdiction, the State Defendants were violating the IDEA, the

2004 amendments and the Interagency Agreement.  Among other things, the State Defendants argued

that the Districts failed to state a claim because S.G. was an aggrieved party and ALJ Harkness had

jurisdiction to hear S.G.'s appeal of LHO Pappas' decision not to incorporate the settlement

---

[6]The Districts' argument regarding supplemental jurisdiction misses the point and is rejected.  The Districts contend that because their request for review of ALJ Harkness' decision is now properly before the Court, the Court may exercise supplemental jurisdiction over the claims for breach of the settlement agreement.  The Court could decide those claims under the IDEA only if they were properly exhausted.  Supplemental jurisdiction is irrelevant to this point.

[7]Although a plaintiff may avoid exhaustion by showing that exhaustion would be futile or inadequate to protect the plaintiff's rights, *see Honig v. Doe*, 484 U.S. 305, 326-27, 108 S. Ct. 592, 606 (1988), the Districts fail to explain why exhaustion would be inadequate or futile.  The Districts do argue that requiring exhaustion would be contrary to the intent of the IDEA, but this argument is based upon the 2004 amendments, which the Court has already determined do not apply to the settlement agreement in this case.  Moreover, it appears that the Districts may present their claims either through the state complaint process or through a due process hearing.  *See Lewis Cass Intermediate Sch. Dist. v. M.K. ex rel. J.K.*, 290 F. Supp. 2d 832, 836-37 (W.D. Mich. 2003).

agreement into the order of dismissal.  The State Defendants further argued that the Districts' request for injunctive relief to prohibit the State Defendants from proceeding with the administrative process and interfering with the parties' settlement agreement were rendered moot as a result of ALJ Harkness' November 1, 2006, decision.

The Districts' claims against the State Defendants, as currently pled in the first amended verified complaint, include the original Count III – that the State Defendants improperly exercised jurisdiction over S.G.'s appeal.  Count IV, against S.G. and the State Defendants, is a claim for review of the November 1, 2006, decision pursuant to § 1415(i)(2) of the IDEA.  Finally, Count V, like Count IV of the original verified complaint, alleges that the State Defendants violated the IDEA and the 2004 amendments by assuming jurisdiction over S.G.'s appeal.  The Districts also allege in Count V that the State Defendants failed to rotate state review officers as required by the Interagency Agreement and that they failed to provide an impartial state review officer who was not an employee of MDE.

### a.    Count III

The Court agrees with the State Defendants that ALJ Harkness' November 1, 2006, decision renders moot the Districts' request in Count III (and in Count V) for injunctive relief precluding the State Defendants from proceeding with the administrative process, and the Districts do not contend otherwise.  The Court further concludes that Count III fails to state claim.  The Districts allege in that claim that the State Defendants violated the IDEA, the 2004 amendments, and the Emergency Rules by exercising jurisdiction over S.G.'s appeal.  The Districts also assert that the State Defendants violated or breached the settlement agreement, but they fail to explain how the State Defendants – non-parties to the settlement agreement – could have violated that agreement.  The Districts assert in that claim that S.G. was not "aggrieved" by a "final decision" of a hearing officer "after a hearing"

20

on the merits of a complaint, and therefore, the MDE improperly accepted jurisdiction in violation of its long standing policy of refusing to accept jurisdiction over disputes involving the interpretation, implementation, and enforcement of settlements between parties to a due process hearing.

As mentioned above, Michigan employed a two-tier hearing process for due process complaints filed prior to July 1, 2006. S.G.'s complaint was subject to two levels of review. Pursuant to 20 U.S.C. § 1415(g), "any party aggrieved by the findings and decision rendered [in a hearing by a local review officer] may appeal such findings and decision to the State educational agency." The provision authorizing judicial review of a state review officer's decision is similar: "any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented . . . ." 20 U.S.C. § 1415(i)(2)(A). The IDEA does not define "aggrieved," nor does it specify who qualifies as a "party aggrieved by the findings and decision," but it is clear that the disabled child, for whose benefit the IDEA was enacted, and the LEA – both of the parties to the due process complaint proceeding – can be aggrieved parties. Moreover, the Supreme Court has recently held that the IDEA grants parents enforceable rights independent from those of the child and that parents may therefore be a "party aggrieved" for purposes of § 1415(i)(2). *See Winkelman v. Parma City Sch. Dist.*, __ U.S. __, 127 S. Ct. 1994, 2004-05 (2007). The plain meaning of the term "aggrieved" is "[h]aving suffered loss or injury," and the meaning of "aggrieved party" is "[o]ne whose legal right is invaded by an act complained of, or whose pecuniary interest is directly and adversely affected by a decree or judgment." *Black's Law Dictionary* 65 (6th ed. 1990). In this case, S.G. and her child were both aggrieved by LHO Pappas' order denying the motion to incorporate the settlement agreement into the order of dismissal because the omission from the order directly affected S.G's ability to seek an

21

award of attorney fees and it may have affected S.G.'s ability to enforce the settlement agreement through the state complaint process. The Districts offer no persuasive argument to the contrary.

The Districts contend that S.G. was not a "party aggrieved" by the findings and decision of LHO Pappas because her decision denying S.G.'s motion was not a decision on the merits of S.G.'s complaint. This argument finds no support in the language of the statute, and the Districts fail to cite any authority for this proposition. Moreover, in light of the rights and remedies the IDEA affords to both disabled children and their parents as tools for enforcing the statute's mandate that school districts provide a FAPE, *see Winkelman*, 127 S. Ct. at 2004, the Court declines to limit the scope of review to exclude an issue expressly arising under the IDEA. Therefore, the Court will dismiss Count III.[8]

### b.    Count IV

Although, as mentioned above, Count IV of the Districts' first amended verified complaint is properly before the Court as an appeal of ALJ Harkness' decision pursuant to § 1415(i)(2)(A), the Court concludes that the Districts have improperly asserted this claim against the State Defendants, who were not parties to proceedings before LHO Pappas or ALJ Harkness. Generally, in a case where a parent files a civil action under § 1415(i)(2)(A), the independent school district within which the child's school is located is considered to be the real party in interest to the action. *See Reinholdson v. Minnesota*, No. CIV. 02-795 ADM/AJB, 2002 WL 31026580, at *6 (D. Minn. Sept. 9, 2002). An SEA is a proper party only if the action involves claims of "systematic" violations of the IDEA. *See id.* A claim is "systematic" if it "implicates the integrity or reliability of the IDEA

---

[8]As the State Defendants point out, if S.G. was not a "party aggrieved" by LHO Pappas' decision, thus precluding state level review of that decision pursuant to 20 U.S.C. § 1415(g), then it would appear that the Districts could not be a "party aggrieved" by ALJ Harkness' decision for purposes of seeking review by this Court pursuant to § 1415(i)(2)(A).

dispute resolution procedures," or "requires restructuring the education system itself." *Doe v. Arizona Dep't of Educ.*, 111 F.3d 678, 682 (9th Cir. 1997). The Districts may assert that they have alleged systematic violations of the IDEA – failure to rotate state hearing officers and bias by ALJ Harkness – but, as set forth below, the alleged failure to rotate hearing officers does not violate the IDEA, and the Districts' remaining assertions basically amount to being dissatisfied with ALJ Harkness' decision, which can be addressed in the judicial review process. *See Reinholdson*, 2002 WL 31026580, at *6. Accordingly, the Court will dismiss Count IV against the State Defendants.

### c. Count V

Count V of the first amended verified complaint is captioned "Violations of IDEA 2004 and IDEA 1997." These alleged violations include ALJ Harkness' improper assumption of jurisdiction over S.G.'s appeal (which the Court has already rejected), the State Defendants' failure to rotate hearing officers as required by the Interagency Agreement and Emergency Rules, failure to provide an impartial state review officer, and failure to provide a state review officer who is not an employee of the state educational agency. The State Defendants contend that Count V must be dismissed for several reasons. First, they contend that the IDEA does not confer an express or implied right of action upon LEAs such as the Districts to sue states or SEAs for failure to comply with the IDEA's requirements. Second, they contend that the alleged violations of the Interagency Agreement and the Emergency Rules do not give rise to a violation of the IDEA. Third, they contend that, to the extent that the Districts allege a breach of contract claim based upon the Interagency Agreement, such claim is barred by the Eleventh Amendment. Finally, they contend that notwithstanding Eleventh Amendment immunity, the Districts are not third party beneficiaries entitled to enforce the Agreement.

The Court begins its analysis with the State Defendants' argument that the IDEA does not provide local school districts, either expressly or by implication, an independent right of action to sue states for failing to comply with the IDEA's requirements.  The issue presented is one of statutory standing – whether the plaintiff is authorized to sue under the terms of a particular statute – as opposed to Article III, or constitutional, standing, which provides a broader limitation upon federal courts' exercise of their subject matter jurisdiction.  *See Coan v. Kaufman*, 457 F.3d 250, 256 (2d Cir. 2006) ("Although we have referred to a plaintiff's status as a "participant" under ERISA as a question of "standing," it is a statutory requirement, not a constitutional one.") (citation omitted); *Carolina Cas. Ins. Co. v. Pinnacol Assurance*, 425 F.3d 921, 926 (10th Cir. 2005) ("Congress may extend the right to sue under a statute to any plaintiff that has constitutional standing.  It may also, however, place additional restrictions on who can sue, imposing requirements of 'statutory standing.'") (citing *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004)); *United States v. $260,242.00 United States Currency*, 919 F.2d 686, 687-88 (11th Cir. 1990) (concluding that the appellant had constitutional standing to assert a claim to forfeited funds but that appellant lacked statutory standing because the appellant failed to identify the owner of the funds for whom he was acting as a bailee).  The Districts' Article III standing argument thus misses the point.  However, the Court agrees with them that they have Article III standing because: (1) they have alleged an injury arising from ALJ Harkness' November 1, 2006, decision and the State Defendants' alleged failure to implement the IDEA and the Agreement, i.e., the adverse decision by ALJ Harkness; (2) the injury is fairly traceable to the challenged actions, i.e., the adverse decision arose out of the State Defendants' failure to provide an impartial hearing officer; and (3) there is a substantial likelihood that a ruling by this Court that the State Defendants violated the IDEA or the Agreement would remedy the Districts' alleged injury.  *See Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d

838, 852 (6th Cir. 2002) (quoting *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001)).  Nonetheless, the Districts must still have statutory standing.

When considering a federal statute, a court's task is to determine whether Congress intended to create a private right of action as well as a private remedy in favor of the plaintiff.  *See Alexander v. Sandoval*, 532 U.S. 275, 286, 121 S. Ct. 1511, 1519 (2001).  The instant question is whether Congress intended to provide a right of action to LEAs, such as the Districts, to sue states for failing to comply with the procedural requirements of the IDEA or for failing to comply with an interagency agreement.  Turning to the statute, the Court notes that § 1415(b) specifies the types of procedural safeguards that a state educational agency must provide.  While most of the procedural safeguards are for the benefit of the child and his or her parents, § 1415(b)(6)(1) requires that the state must provide "[a]n opportunity for any party to present a complaint – (A) with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  Upon the filing of a complaint pursuant to subsection (b)(6), the parents or the LEA may request an impartial due process hearing.  20 U.S.C. § 1415(f).  Finally, "[a]ny party aggrieved by the findings and decision made" by a hearing officer in a due process hearing "shall have the right to bring a civil action with respect to the complaint."[9] 20 U.S.C. § 1415(i)(2)(A).  Taken together, these provisions show that the IDEA provides an express right of action to LEAs only for review of the findings and decision of a hearing officer issued pursuant to the administrative process.  As set forth above, some courts have recognized that, while an SEA is not normally a proper party in an appeal pursuant to § 1415(i), an SEA may be named as a defendant in an appeal when the plaintiff alleges a  systematic failure in all due process hearings

---

[9]A party may also bring a civil action with regard to the findings and decision made under § 1415(k) regarding a placement of the child in an alternative setting.  *See* 20 U.S.C. § 1415(i)(2).

rather than only in a particular case.  Apart from that circumstance, no other provision affords the Districts an express right of action to an LEA.  *Cf. Asbury Park Bd. of Educ. v. Hope Acad. Charter Sch.*, 278 F. Supp. 2d 417, 421 (D.N.J. 2003) (stating that "[b]ecause the school district . . . was not aggrieved by the outcome of underlying administrative proceedings in a dispute over a particular child, the IDEA similarly does not afford it an express private right of action").

Any argument by the Districts that the IDEA affords them an implied right of action to sue the MDE for its failure to comply with the IDEA (apart from an action under § 1415(i)) must fail. Courts have held that the IDEA does not provide LEAs an implied private right of action. In doing so, courts have generally focused upon the considerations that the IDEA was enacted for the benefit of disabled children and their parents and that the statute itself suggests that a right of action should not be implied in favor of LEAs.  For example, in *Andrews v. Ledbetter*, 880 F.2d 1287 (11th Cir. 1989), LEAs filed suit under the Education of the Handicapped Act ("EHA"), the predecessor of the IDEA, seeking a declaration that the Georgia Department of Education and the Georgia Department of Human Resources were obligated to provide every handicapped child in Georgia a FAPE, including residential placement services.  The Eleventh Circuit held that the case was properly dismissed because the EHA did not grant LEAs an implied right of action to force state agencies to comply with the EHA.  In examining the purpose of the EHA, the court noted that while the EHA imposed certain obligations upon LEAs, "the Act's procedural safeguards clearly are designed to provide handicapped children and their parents or guardians a way to assert a handicapped child's right to a free appropriate public education." *Id.* at 1289.  The court further found that in spite of the provision granting LEAs the right to challenge the provisions of a child's IEP in an appeal from a state administrative proceeding, "nothing indicates that Congress intended to grant an LEA statutory standing to bring suit to compel a state agency to fulfill its statutory duties." *Id.* at 1290.  The Third

26

Circuit reached a similar conclusion under the IDEA in *Lawrence Township Board of Education v. New Jersey*, 417 F.3d 368 (3d Cir. 2005). In that case, an LEA filed suit against New Jersey under the IDEA, claiming that the state was obligated to assume the cost of the child's residential placement. After examining sections 1415(a) and 1412(a)(6), the Court first concluded the LEA had no express private right of action because the "language strongly suggests that Congress intended to provide a private right of action only to disabled children and their parents." *Id.* at 371. It continued, "[i]ndeed, section 1415(b), which sets forth the types of procedures required, limits most relief under those procedures to the parents of a disabled child." *Id.* Regarding an implied right of action, the court reasoned that because nothing in the act evinced a Congressional intent under the IDEA to authorize an action over a "budgetary dispute between local and state agencies," an action could not be implied on behalf of the LEA. *See id.* at 371-72. The court distinguished cases cited by the LEA as support for a private right of action, noting that they were cases in which parents of a disabled child, not LEAs, were found to have a private right of action. *See id.* at 372. In *Asbury Park Board of Education, supra*, a local public school district sued charter schools seeking a declaratory judgment that the New Jersey Department of Education's application of the Charter School Act's IDEA provision conflicted with the IDEA's mainstreaming requirement. The court refused to find an implied right of action because: (1) the IDEA was enacted for the benefit of disabled parents and their children rather than LEAs; and (2) the existence of an express private right of action under § 1415 for any party aggrieved by underlying administrative proceedings suggested that it was unlikely that Congress intended to provide a private right of action in the absence of such underlying proceedings. *See* 278 F. Supp. 2d at 422. *See also S.C. v. Deptford Twp. Bd. of Educ.*, No. 01-5127, 2006 WL 1784591, at *7-8 (D.N.J. June 23, 2006) (finding no implied right of action in favor of an LEA because: (1) the existence of an express right of action under § 1415(i) rendered

27

it unlikely that Congress intended to create a right of action by an LEA against a state; (2) the dispute involving a funding disagreement did not concern the primary purpose of the IDEA – the educational needs of disabled children; and (3) the IDEA delegates regulatory authority to the Secretary of Education); *Bd. of Educ. of the Senecan Falls Cent. Sch. Dist. v. Bd. of Educ. of the Liverpool Cent. Sch. Dist.*, 728 F. Supp. 910, 913-14 (W.D.N.Y. 1990) (finding no private right of action in light of the IDEA's "limited procedural right to appeal the findings and decision rendered in a impartial hearing"). In light of these cases and the Districts' failure to cite any persuasive basis for implying a private right of action by an LEA against an SEA or a state, the Court concludes that he Districts may not assert a claim against the State Defendants under the IDEA, apart from an appeal under § 1415(i) alleging a systematic violation.

Before turning to the issue of whether the violations alleged in Count V are systematic violations rendering the State Defendants proper parties in this case, the Court finds it necessary to address the Districts' third party beneficiary argument set forth in their supplemental brief regarding their claims against the State Defendants. As already noted, Count V alleges a violation of the IDEA and the 2004 amendments. As part of that claim, the Districts allege that the State Defendants violated the IDEA and the 2004 amendments by failing to follow the Interagency Agreement and the Emergency Rules. In their supplemental brief, but not in Count V, the Districts allege that they are third party beneficiaries of the Interagency Agreement entitled to enforce it pursuant to the IDEA. In support of this proposition, the Districts cite several cases in which courts have entertained IDEA claims based upon interagency agreements. *See Asbury v. Missouri Dep't of Elementary and Secondary Educ.*, No. 4:98CV01019, 29 IDELR 877 (E.D. Mo. 1999); *Felix v. Waihee*, No. 93-00367DAE, 21 IDELR 48 (D. Haw. 1994); *Farzana K. v. Indiana Dep't of Educ.*, No. 2:05-CV-266, 2006 WL 2938663 (N.D. Inc. Oct. 13, 2006); *Fetto v. Sergi*, 181 F. Supp. 2d 53 (D. Conn. 2002);

28

and *Barbara Z v. Obradovich*, 937 F. Supp. 710 (N.D. Ill. 1996).  These cases fail to support the Districts' argument because all of them were initiated either by parents of disabled children or by students with disabilities.  More importantly, as the State Defendants note, the interagency agreements at issue in these cases involved agreements specifically addressed by the IDEA for coordinating provision of services required under the IDEA.  *See* 20 U.S.C. § 1412(a)(12)(B)(i) (referencing services "that are necessary for ensuring a free appropriate public education to children with disabilities within the State").  The Districts fail to cite any provision of the IDEA, and the Court finds none, requiring or governing the type of interagency agreement at issue in this case.  On the other hand, it appears that the requirement of an interagency agreement between MDE and SOAHR was imposed by Executive Order 2005-01 rather than the IDEA.  Thus, apart from lacking standing to assert a violation of the Interagency Agreement, the Districts' claim for the alleged violation of the Interagency Agreement would not arise under the IDEA.

The Court also notes that to the extent that the Districts seek to assert a third party beneficiary claim for breach of the Interagency Agreement under state law, such claim would be barred by the Eleventh Amendment.  The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.  It is well established that the amendment prohibits suits by a citizen against his own state.  *See Macklin v. Huffman*, 976 F. Supp. 1090, 1093 (W.D. Mich. 1997).  The state sovereign immunity doctrine set forth in the Eleventh Amendment bars suits against states in federal court, regardless of the type of relief sought.  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144, 113 S. Ct. 684, 687 (1993).  Because the State of Michigan has not

waived its Eleventh Amendment immunity for state law breach of contract claims by LEAs, the Districts cannot assert such a claim.

The remaining question is whether the Districts' allegations in Count V constitute systematic violations of the IDEA, such that the State Defendants can be considered proper parties in this case. First, the Districts allege that the State Defendants have not rotated hearing officers as required by the Interagency Agreement and the Emergency Rules. Regarding hearing officers, the IDEA requires only that the hearing officer: (i) not be an employee of the SEA or the LEA and must not be "a person having a personal or professional interest that conflicts with the person's objectivity in the hearing"; (ii) must possess knowledge and the ability to understand the IDEA and state regulations of the IDEA; (iii) must possess knowledge and ability to conduct hearings in accordance with standard legal practice; and (iv) must possess knowledge and ability to render written decisions. 20 U.S.C. § 1415(3)(i)-(iv). Nothing in the IDEA requires an SEA to rotate hearing officers. Rather, to the extent that SOAHR is required to do so, that requirement is set forth in the Interagency Agreement. Thus, the Districts' failure to rotate allegation does not implicate the IDEA. The Districts' next allegation is that the State Defendants failed to provide an impartial hearing officer, but nothing in the first amended verified complaint or the Districts' briefs suggests that ALJ Harkness was partial. At most, the Districts' allegations suggest that ALJ Harkness may have reached her conclusion on the issue prior to the hearing on S.G.'s appeal. This shows that ALJ Harkness was disposed toward a particular view of the law, not that she had any bias against he Districts. In any event, the Districts' conclusory impartiality allegation fails to establish a systematic violation required to render the State Defendants proper parties in this case. The Districts' final allegation is that the State Defendants violated the IDEA because ALJ Harkness is an MDE employee. This allegation presents a violation of the IDEA, *see* 20 U.S.C. § 1415(f)(3)(i)(I), and,

30

because the Districts allege that ALJ Harkness is the only hearing officer presiding over due process hearings, it would also present a systematic violation.  The problem with this allegation is that Executive Order 2005-1, of which this Court may take judicial notice, *see Sebastian v. United States*, 185 F.3d 1368, 1374 (Fed Cir. 1999) ("In deciding whether to dismiss a complaint under Rule 12(b)(6), the court may consider matters of public record."), establishes that ALJ Harkness is employed within SOAHR and is not employed by the MDE.  The Districts merely allege that "[a]lthough [ALJ Harkness] was apparently nominally transferred from Defendant MDE to Defendant SOAHR by Executive Order 2005-01 (MCL 445.2021), [ALJ Harkness] is in reality and in fact an Employee of Defendant MDE."  (1st Am. Verified Compl. ¶ 127.)  Given that the Districts fail to allege any factual support for this allegation, especially in the face of Executive Order 2005-01, they fail to state a claim.  *See Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 155 F. Supp. 2d 1, 12 (S.D.N.Y. 2001) (stating that "mere conclusory allegations without factual support are insufficient to survive a motion to dismiss").  Accordingly, Count V will be dismissed.

## C.     S.G.'s Motion for Attorney Fees and Costs

Pursuant to 20 U.S.C. § 1415(i)(3)(A), S.G. has filed a protective motion for attorney fees. That section grants federal district courts jurisdiction over actions brought to obtain an award of attorney fees incurred in a due process hearing.  Section 1415(i)(3)(B) provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs" to the prevailing party.  S.G. filed her motion within sixty days from the date of ALJ Harkness' November 1, 2006, decision – the period specified under the Michigan Administrative Procedures Act for seeking judicial review of an administrative decision.  S.G. states that her counsel filed the motion as a protective filing based upon this Court's unpublished decision in *Lewis Cass Intermediate School District v. M.K.*, No. 5:02-CV-141 (W.D. Mich. Feb. 26, 2004),

in which this Court stated that the sixty day period applies where a party prevails in an administrative hearing, there is no appeal of the administrative decision, and the party seeking fees files an original action in federal district court seeking an award of attorney's fees. *See id.* at 5 n.2 (citing *King v. Floyd County Bd. of Educ.*, 228 F.3d 622, 624 (6th Cir. 2000)). This Court held that where a claim for attorney fees is by motion following a federal court judgment after review of an administrative hearing, the time for filing a motion for attorney fees is governed by Fed. R. Civ. P. 54(d)(2). S.G. asserts that, because this action has now ripened into an action by the Districts for review of ALJ Harkness' decision pursuant to § 1415(i)(2), Fed. R. Civ. P. 54(d)(2) provides the proper time for filing a motion for attorney fees. However, because of the unique procedural posture of this case, she filed her motion within sixty days of ALJ Harkness' decision to avoid any claim that her motion was not timely.

In response, the Districts contend that the Court must summarily deny S.G.'s motion because S.G. failed to timely commence an original action by filing a complaint for attorney fees as required by the statute and by federal courts interpreting the statute. According to the Districts, their "[c]ounsel is unaware of any federal rule or case that allows a party to commence an action against an adverse party by way of a motion which, under the Federal Rules, is in a completely different part of the rules." (Pls.' Br. Opp'n at 4.) The Districts' argument is rejected because it is supported neither by the statute nor by case law. In *King*, the Sixth Circuit specifically noted that nothing in the statute itself "appear[ed] to authorize the bringing of an action by the side that prevailed in the administrative proceeding" for an award of attorney fees. *See* 228 F.3d at 625. The court merely stated that the legislative history supported the conclusion that the language of the statute was broad enough to authorize a suit for recovery of legal fees incurred in the underlying administrative proceeding. *See id.* Importantly, the court did not say that a request for attorney fees under the

32

statute could not be made by motion pursuant to Fed. R. Civ. P. 54(d)(2) upon conclusion of judicial review pursuant § 1415(i)(2), and this Court obviously did not interpret *King* as announcing such a rule when it referred to *King* in its decision in *M.K.* As S.G. correctly notes, unlike the instant case, there was no appeal pursuant to § 1415(i)(2) in *King*, nor was there such an appeal in *Johnson v. Brandywine Public Schools*, 38 IDELR 97 (W.D. Mich. 2003), or *J.B. v. Essex-Caledonia Supervisory Union*, 943 F. Supp. 387 (D. Vt. 1995), thus rendering the Districts' reliance on those cases misplaced. Moreover, in addition to this Court's decision in *M.K.*, the Court's own cursory research discloses several decisions in which courts recognized that a request for attorney fees may be appropriately made by motion pursuant to Rule 54(d)(2) at the conclusion of an appeal under § 1415(i)(2). *See Shapiro v. Paradise Valley Unified Sch. Dist. No. 69*, 374 F.3d 857, 860 (9th Cir. 2004) ("After judgment was entered, the Shapiros moved in the district court for attorney's fees."); *DiBuo v. Bd. of Educ. of Worcester County*, 309 F.3d 184, 192 (4th Cir. 2002) ("We also express no opinion on the issues of whether and in what amount attorneys' fees and other costs would be recoverable by the DiBuos in the event they have the opportunity to make another motion under the IDEA's fee-shifting provision, 20 U.S.C. § 1415(i)(3)(B)."); *Birmingham v. Omaha Sch. Dist.*, 298 F.3d 731, 733 (8th Cir. 2002) (noting that the parents' attorney filed a motion for attorney fees upon remand after an appeal of the district court's decision in an action under § 1415(i)(2)); *DeKalb County Sch. Dist. v. J.W.M.*, 445 F. Supp. 2d 1371, 1379 (N.D. Ga. 2006) ("The correct procedural method for obtaining an award of fees and costs is to file a motion, not a claim within a pleading.").

Although the Court rejects the Districts' contention that S.G. may not request an award of attorney fees by motion, the Court will deny S.G.'s motion without prejudice until the Court has ruled upon the Districts' appeal of ALJ Harkness' decision. At that point, S.G. may make a motion, if appropriate, pursuant to Rule 54(d)(2).

33

**D.      The Districts' Motion to Compel**

Finally, the Districts have file a motion to compel the State Defendants to file the administrative record, to set a briefing schedule, and for discovery from the State Defendants. Because the Court has concluded that the State Defendants should be dismissed from this case, the Court will deny the Districts' request to compel the State Defendants to file the administrative record and for discovery from the State Defendants.  The Court will also deny the request for a briefing schedule and will instead issue an order setting a Rule 16 conference, at which time the parties may discuss a briefing schedule.

## IV.  Conclusion

In accordance with the foregoing, the Court will grant the Districts' motion for leave to file a first amended verified complaint and will grant S.G.'s and the State Defendants' motions to dismiss.  The Court will deny S.G.'s motion for attorney fees without prejudice.  Finally, the Court will deny the Districts' motion to compel, to establish a briefing schedule, and for discovery from the State Defendants.

An Order consistent with this Opinion will be entered.


Dated:  July 27, 2007                                    _____/s/ Gordon J. Quist_____
                                                                        GORDON J. QUIST
                                                                        UNITED STATES DISTRICT JUDGE

34