UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TRAVERSE BAY AREA INTERMEDIATE
SCHOOL DISTRICT, TRAVERSE CITY
AREA PUBLIC SCHOOLS,

          Plaintiffs,

v.                                            Case No. 5:06-CV-139

MICHIGAN DEPARTMENT OF EDUCATION,          HON. GORDON J. QUIST
DEPARTMENT OF LABOR AND ECONOMIC
GROWTH, STATE OFFICE OF
ADMINISTRATIVE HEARINGS AND
RULES, and S.G., on behalf of her minor
 child, S.G.,

          Defendants.
_____/

**OPINION**

       Plaintiffs, Traverse City Area Public Schools and Traverse Bay Intermediate School District

(the "Districts"), filed this action on September 29, 2006, against Defendants S.G. ("S.G."), on

behalf of her minor child, S.G., the Michigan Department of Labor & Economic Growth, the State

Office of Administrative Hearings & Rules ("SOAHR"), and the Michigan Department of Education,

asserting four counts in their verified complaint for declaratory, injunctive, monetary, and equitable

relief.  By Order dated July 27, 2007, the Court dismissed all counts of the amended verified

complaint except Count IV, which the Court limited as a claim pursuant to the Individuals with

Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, for review of the State Review

Officer's ("SRO") November 1, 2006, Decision and Order.

Presently before the Court are the parties' cross motions for summary judgment on the Districts' claim for review of the SRO's decision.  For the reasons set forth below, the Court will reverse the SRO's Decision and Order.

## I.  Background and Procedural History

S.G. is the parent of her minor daughter, S.G.  The minor child is enrolled in Plaintiff Traverse Bay Area Intermediate School District.  She has a primary disability of autism and has been diagnosed with other medical conditions, which qualify her for special education services from the Districts.  The parties dispute whether the child's medical condition precludes her from an in-school placement, but that dispute is not relevant to the issue before the Court.

On June 24, 2005, S.G., who was unrepresented by counsel, requested a due process hearing regarding the minor's existing individualized education program ("IEP") dated February 4, 2005. Pursuant to that IEP, the child was receiving several hours of home-based instruction each week. In her hearing request, S.G. challenged the sufficiency of the home-based services and sought additional home-based services from the Districts.  The Districts asserted that the existing home-based instructional program might have been too restrictive, and they sought medical information pertaining to whether the child could receive in-school services.  The parties agreed that Davida Pappas, identified in a Michigan Department of Education document as an approved hearing officer, would serve as the local hearing officer ("LHO") to decide the dispute.[1]  Over the next several

---

[1] As discussed more fully in the Court's July 27, 2007 Opinion, at the time S.G. requested her due process hearing, Michigan had in place a two-tier review procedure providing for review at both the local and state levels. (7/27/07 Op. at 4-5.)  Effective July 1, 2006, Michigan changed to a single tier system of review by a state review officer. (*Id*. at 5.)

2

months, LHO Pappas conducted a number of pre-hearing conference calls pertaining to the exchange of education and medical records.

In January of 2006, S.G. retained her present counsel to represent her in the due process hearing.  Subsequently, S.G. provided medical records to the Districts via an *in camera* inspection by LHO Pappas.  LHO Pappas scheduled the due process hearing for May 15, 2006.  Thereafter, the parties returned to the IEP process and agreed that if a dispute arose out of the IEP team meeting, it would be subject to the upcoming due process hearing.  The parties held IEP team meetings on April 7, 2006, and May 4, 2006.  At the conclusion of the meetings, the Districts proposed an IEP providing for a number of things, including supplementary aids and accommodations and comprehensive reevaluations of the minor by a team of educational and medical professionals.

On May 6, 2006, the Districts made a written ten-day offer pursuant to 20 U.S.C. § 1415(i)(3)(D) to S.G.[2]  (Letter of 5/5/06 from Butler to Brower, Pls.' Br. Supp. Mot. Ex. C.)  Among other things, the offer provided that the May 2006 IEP would be implemented as written, subject to certain amendments set forth in the settlement offer.  In addition, it provided that the parties "agree[d] to dismiss the due process hearing requested regarding the February 4, 2005 IEP in this

---

[2]The ten-day offer rule provides, in pertinent part:
(D)  Prohibition of attorneys' fees and related costs for certain services. (i) In general.  Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if –
    (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;
    (II) the offer is not accepted within 10 days; and
    (III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

20 U.S.C. § 1415(i)(3)(D)(*i*).

matter, with prejudice, and a Hearing Officer Order would be entered fully and finally terminating the proceedings based upon the terms of this offer." (*Id.* at 4.)

On May 6 or 7, 2006, S.G.'s counsel spoke to the Districts' counsel about the offer and requested certain changes, including the Districts' agreement to pay S.G.'s attorney fees and delayed implementation of the evaluation review plan until the end of the first semester of the 2006-2007 school year. By letter dated May 8, 2006, to S.G.'s counsel, the Districts' counsel communicated the Districts' rejection of S.G.'s proposed changes, including, specifically, S.G.'s request for reimbursement of attorney fees. (Letter of 5/8/06 from Butler to Brower, Pls.' Br. Supp. Mot. Ex. C.) The Districts' counsel further acknowledged S.G.'s stated intention to file a motion to incorporate the ten-day offer into the order of dismissal for the purpose of creating prevailing party status (a requisite to a statutory award of attorney fees) and indicated that his client had instructed him to oppose any such motion. That same day, S.G.'s counsel faxed the Districts' counsel a letter accepting the terms of the offer and confirming his intent to file a motion requesting LHO Pappas to review the settlement offer and incorporate it as part of her dismissal order.[3]

During a conference call on May 9, 2006, among counsel and LHO Pappas, S.G.'s counsel advised LHO Pappas of his request to incorporate the settlement offer as part of her order of dismissal. LHO Pappas instructed the parties to brief the issue and indicated she would thereafter decide the motion. On June 30, 2006, after considering the parties' submissions, LHO Pappas issued a decision denying S.G.'s motion and entered an order dismissing the matter with prejudice and without incorporating the terms of the settlement, as S.G. had requested. In her decision, LHO

---

[3]There is some dispute about the order in which the May 8 letters were sent. Whether S.G.'s acceptance letter was sent prior to the Districts' letter, however, is immaterial to the Court's analysis.

4

Pappas noted that: (1) she had no jurisdiction to enforce or embrace private settlements or to become involved in an award of attorney fees; (2) that she had no authority to enforce private settlements; and (3) that she played no part in developing the settlement and had no ongoing role in the process. (LHO 6/30/06 Decision at 4.)  As additional support, LHO Pappas cited *Board of Education of the Holton Public Schools*, 41 LRP 278 (SEA MI 2004), and a decision from the Eastern District of Michigan, *Tompkins ex rel. A.T. v. Troy School District*, which was subsequently affirmed by the Sixth Circuit.  *See Tompkins ex rel. A.T. v. Troy School District*, 199 F. App'x 463 (6th Cir. 2006).

S.G. filed for state level review of LHO Pappas' decision on July 25, 2006.  The state agency assigned the appeal to State Review Officer Lauren Harkness ("SRO Harkness").  The Districts thereafter filed a motion requesting dismissal on the ground that SRO Harkness lacked jurisdiction. SRO Harkness denied the motion in a decision issued on August 26, 2006.  SRO Harkness subsequently denied the Districts' motion to stay the administrative proceeding pending their attempt to obtain interlocutory judicial review of the jurisdictional issue.  Thereafter, the Districts filed the instant action requesting, among other things, that the Court enjoin SRO Harkness from reviewing LHO Pappas' Decision and Order.  The Court denied the Districts' motion for a temporary restraining order in its October 6, 2006, Memorandum Order, noting, among other things, that SRO Harkness would soon be rendering her decision.

SRO Harkness issued her Decision and Order on November 1, 2006, in which she determined that LHO Pappas erred in refusing to incorporate the settlement agreement into her order of dismissal.  SRO Harkness therefore incorporated the settlement agreement into her order.  In her decision, SRO Harkness first noted that LHO Pappas' conclusion that the settlement agreement was intended as a private agreement was without any legal or factual basis.  (SRO 11/1/06 Decision and

Order at 6.)  She next determined that nothing in the record precluded incorporation of the settlement because the Districts' offer lacked a provision precluding judicial enforcement or administrative supervision and the Districts consented to incorporation of at least some terms of the settlement agreement into the hearing officer's order.  (*Id.* at 7.)  Next, SRO Harkness determined that LHO Pappas erroneously concluded that a hearing officer's inability to award attorney fees or determine prevailing party status rendered incorporation of the settlement agreement into the order of dismissal improper.  (*Id.* at 7-8.)  Having concluded that LHO Pappas abused her discretion, SRO Harkness determined that the settlement was in the best interests of the child and that the settlement should be entered into the final administrative order.  (*Id.* at 9-10.)

## II.  Standard of Review

The IDEA specifies that in a proceeding such as this, the court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision upon the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).  District courts apply a "modified de novo review" standard in IDEA cases.  *See Nack ex rel. Nack v. Orange City Sch. Dist.*, 454 F.3d 604, 609 (6th Cir. 2006).  This means that "a district court is required to make findings of fact based on a preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings."  *Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 764 (6th Cir. 2001).  The deference requirement stems from the recognition that state hearing officers possess a degree of educational expertise that most federal judges lack.  As the Sixth Circuit has noted, "federal courts are generalists with no expertise in the educational needs of handicapped children, and will benefit from the factfinding of a state agency with expertise in the

field." *Doe v. Smith*, 879 F.2d 1340, 1343 (6th Cir. 1989) (internal quotation marks and citation omitted).  Because educational expertise is the touchstone of deference in these cases, the degree of deference to be accorded findings of fact depends upon the nature of the administrative decision under review.

> The amount of weight due to administrative findings depends on whether the finding is based on educational expertise.  Less weight is due to an agency's determinations on matters for which educational expertise is not relevant because a federal court is just as well suited to evaluate the situation.  More weight is due to an agency's determinations on matters for which educational expertise is relevant.

*McLaughlin v. Holt Pub. Schs. Bd. of Educ.*, 320 F.3d 663, 669 (6th Cir. 2003) (citing *Burilovich v. Bd. of Educ. of Lincoln Consol. Sch.*, 208 F.3d 560, 565 (6th Cir. 2000)).  In contrast to findings of fact, however, "[o]n issues of law, the hearing officer is entitled to no deference."  *Alex R. ex rel. Beth R. v. Forrestville Valley Cmty. Unit Sch. Dist. #221*, 375 F.3d 603, 611-12 (7th Cir. 2004) (citing  *Dale M. ex rel. Alice M. v. Bd. of Educ.*, 237 F.3d 813, 817 (7th Cir. 2001)).

S.G. asserts that in reviewing this matter, the Court should accord SRO Harkness' decision deference rather than LHO Pappas' decision.  She further asserts that SRO Harkness' decision is entitled to greater weight because it was based upon "SRO Harkness' particular expertise regarding education policy and practice."  (S.G.'s Br. Supp. Mot. at 12.)  S.G. is correct that the Sixth Circuit has held that in these circumstances, a district court must defer to the state hearing officer's determination.  *See Burilovich*, 208 F.3d at 567 ("We also reiterate that, when there is a conflict between the holdings of the local and state hearing officers, the court must defer to the state hearing officer's decision in reviewing the record on appeal.")  Even so, the Court finds it appropriate to give little, if any, deference to SRO Harkness' decision because, contrary to S.G.'s assertion, the issue presented in the administrative proceeding was limited solely to whether the parties' settlement

agreement should be incorporated into the order of dismissal.  The issue thus did not concern educational practices or services for the minor, nor did it involve assessing recommendations from educational experts regarding the provision of a free appropriate public education for the minor.  In short, it required no particular educational expertise to resolve.[4]

### III.  Discussion

#### A.      Attorney Fees Under the IDEA and *Buckhannon*

The Court begins its analysis by noting that the issue presented is whether SRO Harkness erred in ruling that the parties' settlement agreement should be incorporated into the order of dismissal, rather than whether S.G. is entitled to an award of attorney fees.  In fact, in its July 27, 2007 Opinion, the Court explained that it would dismiss S.G.'s motion for attorney fees without prejudice, thereby allowing her to refile it pursuant to Rule 54(d)(2) at the conclusion of the appeal, if warranted.  (7/27/07 Op. at 33.)  However, the two issues cannot be entirely divorced from one another, as S.G.'s motion to incorporate the settlement was a necessary prelude to a request for attorney fees.  A brief discussion of fee awards under the IDEA will thus serve to provide the proper context for resolving the issue.

Under the well-recognized "American Rule," parties to litigation are responsible for their own attorneys fees.  *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S. Ct. 1612, 1616 (1975).  In light of this rule, courts generally do not award fees to prevailing parties absent explicit statutory authority to do so.  *See John T. v. Delaware County Intermediate Unit*, 318 F.3d 545, 555 (3d Cir. 2003) (citing *Key Tronic Corp. v. United States*, 511 U.S. 809, 819, 114 S.

---

[4]S.G. makes much of the fact that SRO Harkness was an attorney while LHO Pappas was not.  This is irrelevant to the Court's analysis and decision.

Ct. 1960, 1967 (1994)).  The IDEA provides such authority:  "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs" to a "prevailing party."  20 U.S.C. § 1415(i)(3)(B).  "In actions brought under the IDEA, 'Sixth Circuit case law requires that a district court award attorney fees to a prevailing party where no special circumstances militate against such an award.'" *Tompkins v. Troy Sch. Dist.*, 199 F. App'x 463, 466 (6th Cir. 2006) (quoting *Wikol v. Birmingham Publ. Sch. Bd. of Educ.*, 360 F.3d 604, 611 (6th Cir. 2004) (citing *Berger v. City of Mayfield Heights*, 265 F.3d 399, 406 (6th Cir. 2001)).

As explained in greater detail in the July 27, 2007 Opinion, the fee-shifting statute in the IDEA differs somewhat from other similar "prevailing party" fee statutes from a procedural aspect. That is, in most instances, such as 42 U.S.C. § 1988, which provides for fee awards in civil rights cases, the district court decides both the merits of a claim and whether a fee award is appropriate. In contrast, under the IDEA, absent an appeal to the district court, the merits are decided in the administrative proceeding, and the successful party must file a separate action for an award of fees in federal district court.  *See King v. Floyd County Bd. of Educ.*, 228 F.3d 622, 624 (6th Cir. 2000). Local and state hearing officers or boards thus have no authority to decide attorney fees, *see Wagner v. Logansport Cmty. Sch. Corp.*, 990 F. Supp. 1099, 1104 (N.D. Ind. 1997) (stating that "Indiana's Board of Special Education Appeals is not authorized to hear or otherwise resolve matters relating to the award of attorneys' fees"), although the hearings before them can provide the means for an award as a "prevailing party."[5]

---

[5] LHO Pappas was thus correct in noting that she had no jurisdiction to become involved in an award of attorney fees.

9

In *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 121 S. Ct. 1835 (2001), the Supreme Court substantially altered the basis for attorney fee awards under "prevailing party" fee statutes.  The issue in that case was whether the plaintiff was entitled to an award of fees under the Fair Housing Amendments Act of 1988 as a "prevailing party" where the plaintiff had failed to secure either a judgment on the merits or a court-ordered consent decree.  *Id.* at 600, 121 S. Ct. at 1838.   The Court held that courts may award fees under "prevailing party" statutes only where there is a "judicially sanctioned change in the legal relationship of the parties."  *Id.* at 605, 121 S. Ct. at 1840.  This means that a "prevailing party" is one who obtains relief from the court, such as a judgment on the merits or a court-ordered consent decree.  *Id.* at 604, 121 S. Ct. at 1840.  Rejecting the "catalyst theory" as a basis for a changed relationship, the Court concluded that private settlement agreements do not suffice because they "do not entail the judicial approval and oversight involved in consent decrees . . . [a]nd federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated in the order of dismissal."  *Id.* at 604 n.7, 121 S. Ct. 1840 n. 7.  Because it is also a "prevailing party" statute, the Sixth Circuit and other courts have held that the limitations of *Buckhannon* apply to attorneys fee awards under the IDEA.  *See Tompkins*, 199 F. App'x at 466; *T.D. v. LaGrange Sch. Dis. No. 102*, 349 F.3d 469, 476 (7th Cir. 2003).

The Sixth Circuit had occasion to consider *Buckhannon* in the context of a settlement agreement in *Toms v. Taft*, 338 F.3d 519 (6th Cir. 2003).  In that case, the plaintiffs, a prisoner (Chaiffetz) and his fiancee (Toms), sued various Ohio state officials claiming violations of their right to marry because Chaiffetz' incarceration made it impossible for them to comply with a statute requiring both applicants for a marriage license to appear personally before the probate court.  The

parties reached a settlement, with the district court's supervision, allowing the plaintiffs to marry. Thereafter, the district court entered an order stating that the request for injunctive relief was moot and granting summary judgment to the defendants on the basis of qualified immunity. The district court refused to award attorney fees because it found that the plaintiffs were not prevailing parties. The Sixth Circuit agreed with the district court. It noted that the plaintiffs obtained relief solely as a result of the defendants' voluntary conduct and did not obtain a judgment on the merits compelling a change in the defendant's conduct. *See id.* at 529. The court further observed:

> Nor did plaintiffs obtain a "court-ordered consent decree." Although the settlement conference occurred at the district court, with the district judge's involvement, the resulting settlement did not bear the necessary "judicial imprimatur." For example, no judicial oversight was involved in enforcing the settlement, and the district court did not issue any order altering the defendants' conduct. The district court itself did not consider its action to be a "consent decree" leading to prevailing party status under *Buckhannon*.

*Id.*

The Sixth Circuit has not expressly ruled on the issue of when or whether a settlement agreement in an IDEA administrative hearing can be considered a "consent decree" under *Buckhannon*. In *Tompkins*, *supra*, an IDEA case, the court cited *Buckhannon*, noting that to be considered prevailing parties, the parents' "success must be embodied in either a judgment on the merits or in a settlement agreement enforced through a consent decree." 199 F. App'x at 466. Ultimately, however, the court declined to decide whether the hearing officer's order was imbued with sufficient judicial imprimatur to constitute a consent decree. Instead, the court assumed that the order constituted a consent decree but held that the parents waived their right to attorney fees by accepting the favorable provisions of the district's settlement offer. *See id.* In any event, a substantial number of courts have concluded that a settlement agreement can serve as a consent

decree, but only if the settlement agreement evinces sufficient indicia of judicial imprimatur.  *See, e.g., John T. ex rel. Paul T. v. Delaware County Intermediate Unit*, 318 F.3d 545, 558 (3d Cir. 2003) (stating that a "stipulated settlement could confer prevailing party status . . . where it (1) contained mandatory language, (2) was entitled 'Order,' (3) bore the signature of the District Court judge, not the parties' counsel, and (4) provided for judicial enforcement") (emphasis and citation omitted).

## B.   The Parties' Agreement was a Private Settlement Agreement

The record before the Court in this case compels the inescapable conclusion that the parties' agreement was a so-called private settlement agreement.  That is, it was an agreement reached between the parties without any involvement by LHO Pappas.  By letter dated May 8, 2006, S.G.'s counsel accepted the Districts' settlement offer in its entirety, which included a stipulation that pursuant to the agreement, the hearing officer would enter an order terminating the proceeding with prejudice.  Although S.G.'s counsel indicated in his acceptance that he intended to file a motion requesting LHO Pappas to review the settlement and incorporate it into her order of dismissal, nothing in the terms of the offer reveals any agreement to incorporate the settlement or to seek judicial involvement or oversight over the terms of the settlement.

In concluding that LHO Pappas' order should be reversed, SRO Harkness stated:

> Clearly, the LHO's result relied on [the premise that the accepted settlement agreement was a private offer] but the LHO's decision reveals no rationale for this reliance.  The Districts' brief filed on October 11, 2006, continues to propose this "private settlement" theory, but this final brief still fails to provide any reasoned argument or legal authority to support the contention that the settlement offered here was only to yield a private agreement.  This ALJ can find no legal or factual basis for the existence of a "private settlement" on this record.

(SRO 11/01/06 Decision and Order at 6.)

12

Frankly, the Court is at a loss to understand how, in light of the caselaw cited above and the letters evidencing the parties' offer and acceptance, SRO Harkness could conclude that the parties' agreement was anything other than a private settlement agreement. More puzzling than that is the basis for her reasoning. There is simply no reasoned explanation for this conclusion. For example, SRO Harkness failed to identify where, in the Districts' offer, that hearing officer involvement was contemplated other than entering a routine order of dismissal with prejudice. In short, SRO Harkness ignored the fact that no hearing officer had any involvement in facilitating the parties' settlement.

### C.    The SRO Had No Basis to Enter a Consent Decree

Given the private nature of the settlement agreement, leaving nothing left to be done except entry of an order dismissing the proceeding with prejudice, SRO Harkness lacked authority to enter what is essentially the functional equivalent of a consent decree. She lacked both parties' consent. SRO Harkness stated that she found little authority for the proposition cited by the Districts that a consent order or decree requires the consent of the objecting party, and she said that "no merit should be ascribed to this proposition." (SRO 11/01/06 Decision and Order at 7.) However, this conclusion ignores a substantial body of authority that recognizes that a court cannot enter a valid consent order without the parties' consent. As one well-known treatise states, a consent decree or judgment "results not from adjudication but from a basically contractual agreement of the parties . . . [and] can be entered only if the parties have in fact agreed to entry." 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4433 (2d ed. 2002). Consent underlies the validity of a consent judgment or decree:

> The voluntary nature of a consent decree is its most fundamental characteristic.  The decree's force comes from consent, not a resolution of the merits, and it creates obligations no broader than those to which the signatories have actual authority to give assent.  A consent judgment depends for validity on the consent of both parties, without which it is void.  *A valid consent judgment cannot be rendered by a court when the consent of one of the parties is wanting at the time the agreement becomes the judgment of the court.*  A judgment by consent may not be entered without an actual agreement and consent of the parties, and if such a judgment by consent is so entered it will be held invalid and inoperative in its entirety.

46 Am. Jur. 2d *Judgments* § 211 (1994) (italics added).  *See also Centron Corp. v. United States*, 585 F.2d 982, 987 (Ct. Cl. 1978) ("A consent judgment binds only the parties who have consented to it.").

In *Smyth ex rel. Smith v. Rivero*, 282 F.3d 268 (4th Cir. 2002), the Fourth Circuit discussed the attributes of consent decrees and private settlements in the context of its analysis under *Buckhannon*.  First, it noted that "[a] consent decree has elements of both judgment and contract, a dual character that 'result[s] in different treatment for different purposes.'" *Id.* at 280 (quoting *Local No. 93, Int'l Assn. Of Firefighters, AFL-CIO v. Cleveland*, 478 U.S. 501, 519, 106 S. Ct. 3063, 3073 (1986)).  The court further noted that a consent decree

> embodies an agreement of the parties and thus in some respects is contractual in nature.  But it is an agreement *that the parties desire and expect will be reflected in, and be enforceable as,* a judicial decree that is subject to the rules generally applicable to other judgments and decrees.

*Id.* (italics added) (quoting *Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 378, 112 S. Ct. 748, 757 (1992)).  "By contrast," the court observed, "a private settlement, although it may resolve a dispute before a court, ordinarily does not receive the approval of the court." *Id.*  As support for that proposition, the Fourth Circuit cited the Third Circuit's decision in *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 835 (3d Cir. 1995), in which the court stated:

14

> Our federal courts have neither the authority nor the resources to review and approve the settlement of every case brought in the federal court system.  There are only certain designated types of suits, for instance consent decrees, class actions, shareholder derivative suits, and compromises of bankruptcy claims where settlement of the suit requires court approval.

68 F.3d at 835.

In spite of an absence of any express consent to entry of the terms of the settlement agreement as part of the order of dismissal, SRO Harkness concluded that the Districts could be deemed to have consented upon two grounds.  First, she said that if the Districts sought to preclude judicial enforcement as well as administrative supervision over the settlement, they should have included an express provision in their offer to that effect.  Second, she said that the Districts did consent to incorporation because they agreed that at least some of the terms of the settlement agreement would be incorporated into the hearing officer's order – that the case would be dismissed with prejudice and that the hearing would thereby be fully and finally terminated.  Neither assertion holds water.

The Districts' failure to include a provision specifically precluding judicial enforcement cannot reasonably be construed as consent on an issue not addressed in the terms of the settlement. While it is true that in some cases consent may be inferred from a party's acquiescence in particular conduct, *see Port of Portland v. Water Quality Ins. Syndicate*, 796 F.2d 1188, 1192 (9th Cir. 1986), there are no facts here that could support an inference of consent by silence.  In fact, the circumstances are to the contrary.  That is, at the time counsel were discussing the Districts' offer, both counsel were aware of *Buckhannon* and its requirement for some judicial imprimatur upon a settlement agreement in order to confer prevailing party status for purposes of attorney fees.  At the same time, in light of the Districts' refusal to pay S.G.'s fees as a part of the settlement, it is

15

unreasonable to conclude that the Districts would turn around and consent to incorporation of the settlement agreement in the hearing officer's order of dismissal, thus enabling S.G. to argue that she is entitled to attorney fees.  Similarly, SRO Harkness' second ground for finding consent – that the settlement agreement contemplates a partial incorporation of its terms into the order of dismissal – reads too much into the settlement agreement.  The settlement agreement merely contemplates that the hearing officer would enter an order dismissing the matter with prejudice, as in any proceeding in which the parties resolve their dispute via a private settlement agreement.

### D.     S.G.'s Arguments Provide No Basis For Incorporation

S.G. cites several grounds supporting SRO Harkness' decision, which the Court will discuss separately.  S.G. first contends that SRO Harkness appropriately reviewed and incorporated the terms of the settlement agreement into the order of dismissal because the Ten-Day offer provision under the IDEA is analogous to Fed. R. Civ. P. 68, which requires an accepted offer of judgment to be entered by the Court.  As the Districts note, however, SRO Harkness rejected this argument, stating, "the plain words of the statutory provision do not make entry of an accepted settlement offer into the administrative decision maker's order mandatory as would be the case if the same offer was presented in a proceeding before a judicial decision-maker governed by Fed. R. Civ. Pro 68."  (SRO 11/1/06 Decision and Order at 5.)  The Districts contend that because S.G. did not appeal this aspect of SRO Harkness' ruling, it is now the law of the case and S.G. may not contest it.  Regardless, the argument is not convincing.  Although the Ten-Day offer provision references Rule 68, the text of the statute makes clear that Rule 68 has no specific application in due process proceedings.  The relevant portion of the statute states:  "the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, *in the case of an administrative proceeding*, at any time more

16

than 10 days before the proceeding begins."  20 U.S.C. § 1415(i)(3)(D)(*i*)(I) (italics added).  Thus, even though the statute is consistent with Rule 68's ten-day period for making offers, it does not incorporate Rule 68 or any of its provisions into an administrative proceeding.

S.G. next presents public policy arguments for requiring incorporation and review of private settlement agreements into orders of dismissal.  First, she argues that refusing incorporation of private settlement agreements will result in more disputes going to final hearing.  Second, she contends that in light of the purpose of the IDEA to provide a "free appropriate public education," 20 U.S.C. § 1400(d)(1)(A), parents of children with disabilities should not be barred from seeking attorney fees by being denied the opportunity to argue prevailing party status.  S.G. contends that failing to incorporate Ten-Day offers into orders of dismissal allows school districts, such as the Districts in this case, to effectively punish parents like S.G. for advocating for the rights of their disabled children.  She claims that by forcing parents to incur attorney fees and then presenting them with a "take-it-or-leave-it" offer immediately prior to the due process hearing, school districts leave parents with little choice but to forego an award of fees.

S.G. fails to cite any persuasive authority to support her arguments and, in fact, courts have rejected similar arguments by IDEA plaintiffs.  For example, in *Doe v. Boston Public Schools*, 358 F.3d 20 (1st Cir. 2004), the court rejected similar policy arguments by a plaintiff advocating that fee awards under the IDEA should not fall within *Buckhannon*'s requirements.  In particular, the plaintiff argued that courts should interpret the IDEA so as to encourage prompt resolution of disputes relating to the appropriate education of handicapped children.  The court acknowledged the importance of such a goal, but held that it could not undercut *Buckhannon*'s requirement of a judicially-sanctioned result.  *See id.* at 29.  Similarly, in *John T. ex rel. Paul T. v. Delaware County*,

318 F.3d 545 (3d Cir. 2003), the court rejected essentially the same argument made here – that imposing *Buckhannon*'s requirements on fee awards under the IDEA would encourage parents to engage in protracted litigation simply to recover attorney fees.  The court stated: "This argument 'puts the cart before the horse' as it assumes that litigation decisions are driven by a desire to collect or to avoid paying attorney's fees – and not by the litigants' interests."  *Id.* at 557-58.  The court stated that "[b]ecause attorney's fees awards are never guaranteed, we question that litigation would be protracted for the sole purpose of winning an award."  *Id.*

Courts have likewise rejected the suggestion that denying fee awards under *Buckhannon* would somehow undermine the purposes of the IDEA.  In *Doe*, the court observed:

> Although [foregoing an attorney fee award] is admittedly a practical limitation on the right protected by the statute, this is no less true of other statutes creating or protecting rights that are unquestionably subject to *Buckhannon*, and so does not change the result in this case.  The IDEA guarantees the right to a free education, but "it does not explicitly guarantee the right to attorney's fees incurred in pursuit of that education . . . it is not clear that it would be against the purpose of the IDEA to require plaintiffs who do not achieve judicial imprimatur on their victory to bear their own attorney's fees."

358 F.3d at 29 (citation omitted).  *See also Tompkins*, 199 F. App'x at 468-49 (rejecting the plaintiffs' argument that public policy forbade a voluntary waiver of attorney's fees in IDEA cases).

Finally, S.G. asserts that without incorporation of the settlement agreement into a hearing officer's final order, a parent cannot enforce the agreement through the Michigan Department of Education's Part 8 complaint process.  She asserts that the Michigan Department of Education has taken the position that it will not enforce private settlement agreements through the complaint process, although she has offered no proof that this is in fact the case.  Because the settlement agreement implicates an issue at the heart of the IDEA, namely, a free and appropriate public

18

education for S.G.'s child, the Court is at a loss to understand why the Districts' failure to abide by the settlement agreement could not be the subject of a Part 8 complaint.  Moreover, as the Court noted at oral argument, S.G. has other remedies, including enforcement through a lawsuit.  In any event, whether requiring private settlement agreements in IDEA cases to be approved by state hearing officers and incorporated into orders of dismissal for enforcement purposes is a good policy is not an issue for this Court.

### E.        Rule 54(b) Certification

Plaintiffs have requested that the Court determine that there is no just reason for delay for entry of final judgment on Plaintiffs' claims, which have now been decided.  Both parties agree that Plaintiffs' claims and S.G.'s counterclaims involve separate legal and factual issues.

Federal Rule of Civil Procedure 54(b) provides that in a case involving multiple claims or parties, "the court may direct the entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."  In considering whether to grant a Rule 54(b) certification, a court may consider the following factors:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Allis-Chalmers Corp. v. Philadelphia Elec. Co.*, 521 F.2d 360, 364 (3d Cir. 1975) (footnotes omitted).

19

Considering these factors, the Court concludes that it would be appropriate under the circumstances to direct entry of a final judgment on the Districts' claims and certify that there is no just reason for delay.  First, as the parties agree, the factual and legal issues presented by the Districts' claims are separate from the issues raised in S.G.'s counterclaims.  The Court does note, based upon its review of the counterclaims, that there is some factual overlap between the Districts' claims and S.G.'s counterclaims; that is, S.G. alleges that the counterclaim Defendants' actions toward her and her older daughter, K.G., and her son, E.G., were motivated, in part, by her activities as an advocate for parents of children with special education needs and by S.G.'s request for and pursuit of the due process hearing regarding the education needs of her own daughter, S.G. However, these allegations form the basis of S.G.'s claims that the counterclaim Defendants, among other things: (1) violated her liberty interest in her parent-child relationship with her daughter, S.G., by improperly interfering with S.G.'s decisions about the medical care of her minor child; (2) violated her First Amendment right to the free exercise of her religious beliefs, to petition the government, and to engage in free speech by harassing and retaliating against S.G. and her children; (3) violated her and her children's equal protection rights under the Fourteenth Amendment; and (4) retaliated against S.G. and her daughter in violation of the Rehabilitation Act of 1973 and the Americans with Disabilities Act based upon S.G.'s advocacy on behalf of her daughter and other disabled students.  In contrast, the Districts' claims are limited to various procedural aspects of the administrative hearing; whether they were required to exhaust their claims against S.G. for breach of the settlement agreement; and review of SRO Harkness' November 1, 2006, Decision and Order.

Given that the claims and counterclaims pose distinct legal issues, there is little possibility that a subsequent development in this Court would moot the need for review of the Districts' claims,

and it is unlikely that this Court would reconsider any of the issues that it has already considered in addressing the Districts' claims.  Similarly, there does not seem to be any real possibility of a set-off of the Districts' claims.  Thus, these considerations do not weigh against an immediate appeal.  On the other hand, considerations of judicial economy weigh in favor of immediate appeal of the Districts' claims, which have now all been addressed.  Given that the Court has not yet conducted a Rule 16 scheduling conference on the counterclaims, it would make little sense to require either the Districts, or S.G., to await the resolution of the counterclaims before seeking appellate review.  Accordingly, the applicable factors weigh in favor of an immediate appeal.

## IV.  <u>Conclusion</u>

For the foregoing reasons, the Court will grant the Districts' motion for summary judgment, deny S.G.'s motion for summary judgment, and reverse SRO Harkness' November 1, 2006, Decision and Order.  In addition, the Court will enter a final judgment with regard to all of the Districts' claims and issue a Rule 54(b) certification.

An Order consistent with this Opinion will be entered.


Dated:  February 6, 2008                              /s/ Gordon J. Quist
                                                      GORDON J. QUIST
                                                      UNITED STATES DISTRICT JUDGE

21